**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

KENNETH DOMINICK JOHNSON,    )
    )
        Petitioner,    )
    )
vs.    )    **Case No. 10-CV-034-TCK-TLW**
    )
GREG PROVINCE, Warden,    )
    )
        Respondent.    )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner

Kenneth Dominick Johnson, a state prisoner appearing *pro se*.  Respondent filed a response to the

petition (Dkt. # 5), and provided the state court record necessary for resolution of Petitioner's claims

(Dkt. #s 5, 6 and 7). Petitioner did not file a reply. For the reasons discussed below, the Court finds

the petition for writ of habeas corpus shall be denied.

### BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct. The Oklahoma Court of Criminal Appeals (OCCA) provided a summary of the facts in its

unpublished direct appeal opinion. See Dkt. # 5, Ex. 3. Following review of the record, trial

transcripts, and other materials submitted by the parties, the Court finds the factual summary by the

OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own.

> Sometime during the late evening hours of August 25, 2005, and the early
> morning hours of August 26, 2005, Johnson, Clarence Goode and [Ronald] (Bunny)
> Thompson broke into Mitch Thompson, Jr.'s house. Johnson had a 9 millimeter
> semiautomatic pistol, Clarence Goode carried a .357 semiautomatic pistol, and
> Bunny Thompson carried a .22 Magnum pistol. Mitch Thompson, his wife Tara
> Burchett-Thompson, and her ten-year-old daughter Kayla were asleep, Mitch and
> Tara on a bed and Kayla on a pallet on the floor near her mother. All three were shot

numerous times. Mitch was primarily shot with the .357, Tara and Kayla with the 9 millimeter, and Kayla with the .22. After killing the victims Johnson, Goode and Bunny fled. On the morning of the 26th, Bunny told his sister what had happened. At her insistence he went to the police. Bunny eventually pled guilty and testified against Goode and Johnson, in return for sentences of life without parole. Goode was tried separately and received the death penalty.

The adult victims, Goode and Bunny had been involved in several disputes which escalated over the preceding month. Bunny and Mitch were cousins. Bunny lived with his cousin Michelle Chastain, who was Mitch's sister and Goode's girlfriend. Goode often stayed overnight with Chastain and Bunny. Johnson was Goode's friend but did not know Bunny or the victims. The night of the murders Goode and Johnson met Bunny at the Owasso Wal-mart, where they bought clothing and work gloves. They returned to Michelle's house, loaded and distributed guns, and drove to Mitch's house. Johnson, Goode and Bunny wore latex gloves; Johnson and Goode also wore cloth and rubber work gloves. After the murders these gloves were discarded along a highway, where they were found by police. Police found extra .22 ammunition in a field, where Bunny said he threw it.

(Dkt. # 5, Ex. 3 at 2-3 (footnotes omitted)).

After the police investigated the murders, Petitioner and his co-defendants, Ronald Dwayne Thompson and Clarence Rozelle Goode, Jr., were charged conjointly with three counts of Malice and/or Felony Murder (Counts I, II, and III), and with one count of First Degree Burglary (Count IV), in Tulsa County District Court, Case No. CF-2005-3904. Petitioner was tried separately by a jury. The State sought the death penalty on all three murder counts. The jury found Petitioner guilty on all four counts. Although the jury found one aggravating circumstance, that Petitioner had created a great risk of death to more than one person, it acquitted him of the death penalty and recommended a sentence of life without the possibility of parole for each of the murder convictions and a sentence of twenty years imprisonment and a fine of $10,000 on the First Degree Burglary conviction. On March 17, 2008, the trial judge sentenced Petitioner in accordance in accordance with the jury's recommendation, with all sentences ordered to run consecutively. Petitioner was represented during trial proceedings by attorneys Steven Hightower and Danny Williams.

2

Petitioner perfected a direct appeal in the OCCA.  Represented by attorney Terry J. Hull,

Petitioner raised the following propositions of error:

> Proposition 1:  The State's use of a peremptory challenge to remove a minority from the jury panel violated Appellant's rights under Batson v. Kentucky, et al., and under the equal protection clauses of the federal and state constitutions.

> Proposition 2:  Trial counsel's repeated concessions of "cold-blooded, premeditated murder" in the guilt stage of trial denied Appellant his rights to due process and to the effective assistance of counsel under the 5th, 6th and 14th Amendments to the U.S. Constitution and under Art. II, §§ 7 and 20, of the Oklahoma Constitution.

> Proposition 3:  The trial court committed fundamental sentencing error in issuing a non-uniform and materially inaccurate jury instruction as to the penalty of Life with Parole.

> Proposition 4:  Appellant was subjected to multiple punishments, in violation of his constitutional rights to be free from double jeopardy and his statutory right not to be punished twice for the same act; therefore, his First Degree Burglary conviction should be reversed.

> Proposition 5:  The trial court erred in denying Appellant's motion to suppress his statements obtained in violation of his rights against compelled self-incrimination under the 5th and 14th Amendments to the United States Constitution and under Art. II, § 7 and § 21, of the Oklahoma Constitution.

> Proposition 6:  The trial court erred in admitting prejudicial hearsay statements from Appellant's father over his objection. In combination with other improperly admitted evidence, Appellant's rights to confrontation and to a fair trial were denied him.

> Proposition 7:  Cumulative error and the trial court's abuse of sentencing discretion denied Appellant a fair trial and this Court should modify Appellant's sentences for Counts I, II and III to Life with Parole and to run concurrently.

See Dkt. # 5, Ex. 1. In an unpublished opinion, filed April 29, 2009, in Case No. F-2008-291 (Dkt.

# 5, Ex. 3), the OCCA rejected all seven claims and affirmed the Judgment and Sentence of the

district court.  Nothing in the record suggests that Petitioner sought *certiorari* review by the United States Supreme Court or post-conviction relief in the state courts.

On January 19, 2010, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1).  In his petition, Petitioner identifies the same seven (7) grounds for relief he raised on direct appeal.  See Dkt. # 1.  In response to the petition, Respondent asserts that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d).  See Dkt. # 5.

## *ANALYSIS*

**A.    Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Upon review of the petition and the state court record, the Court finds that Petitioner exhausted his state court remedies by presenting his claims on direct appeal.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.    Claims adjudicated by the OCCA (grounds 1-7)**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

4

362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's grounds 1-7 on direct appeal. Insofar as Petitioner claims violations of the United States Constitution, his claims will be reviewed pursuant to § 2254(d). To the extent Petitioner also claims violations of the Oklahoma Constitution, those claims are denied because they are not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

**1.  Batson error**

As his first proposition of error, Petitioner alleges that the State used a peremptory challenge to remove a minority person from the jury panel in violation of the Equal Protection Clause and Batson v. Kentucky, 476 U.S. 79 (1986).  On direct appeal, Petitioner explained that both he and the removed prospective juror, "Panelist M," were African-American. He argued that the race-neutral

reasons for removal proffered by the State were neither supported nor plausible. See Dkt. # 5, Ex.

1 at 15.  In adjudicating this claim on direct appeal, the OCCA carefully analyzed Petitioner's

argument that other members of the jury panel were treated differently from "Panelist M," and

concluded as follows:

> In reviewing a *Batson* claim we take into account all the circumstances bearing on the issue of racial animosity.  Johnson, Goode and Panelist M are African-American, while Bunny Thompson and the victims are white. The record does not reflect the race of other jurors mentioned in this proposition. Taken as a whole, the record does not show that discriminatory intent was a substantial or motivating factor in the State's use of a peremptory challenge to excuse Panelist M. The trial court did not abuse its discretion in accepting the State's race-neutral explanation and allowing the challenge. This proposition is denied.

(Dkt. # 5, Ex. 3 at 6 (footnotes omitted)).

In order to establish an equal protection violation under Batson, Petitioner must be able to

prove that the prosecutor intentionally discriminated on the basis of race when exercising his

peremptory challenges. See Sallahdin v. Gibson, 275 F.3d 1211, 1225-26 (10th Cir. 2002).  The

disposition of a Batson claim raised in a habeas corpus petition is a question of fact subjected to the

standard enunciated in 28 U.S.C. § 2254(d)(2). Id. at 1225 (citing Weaver v. Bowersox, 241 F.3d

1024, 1029-30, 1031 (8th Cir. 2001)). This Court presumes the state courts' factual findings are

correct unless they are rebutted by clear and convincing evidence. Id.; 28 U.S.C. § 2254(e)(1).

Petitioner has not met that burden in this case. The trial record reflects that after defense counsel

objected to the prosecutor's peremptory challenge as to Panelist M, the prosecutor explained that

some of Panelist M's responses on the questionnaire were "troubling," that Panelist M had left

several questions unanswered, including a question dealing with the death penalty, that Panelist M

had given an inaccurate answer on the questionnaire, and that Panelist M had stated that he could

be distracted during trial by personal issues. See Dkt. # 7-17, Tr. Trans. at 687-89. Petitioner has

failed to show that these reasons were pretextual. Nor do the prosecutor's proffered reasons for

striking "Panelist M" appear illogical or unpersuasive. The Court finds Petitioner has not presented

clear and convincing evidence to rebut the state court's factual finding that the record, taken as a

whole, does not show that discriminatory intent was a substantial or motivating factor in the State's

use of a peremptory challenge to excuse Panelist M.  As a result, Petitioner is not entitled to habeas

corpus relief under 28 U.S.C. § 2254(d)(2).  Sallahdin, 275 F.3d at 1225.

### 2.  Ineffective assistance of trial counsel

As his second proposition of error, Petitioner alleges that trial counsel provided ineffective

assistance when he repeatedly conceded Petitioner's guilt.  See Dkt. # 1.  On direct appeal, Petitioner

argued that trial counsel conceded his guilt when, on at least ten occasions during *voir dire*, he used

the terms "premeditation" and "cold-blooded murder" without Petitioner's permission. The OCCA

rejected this claim, finding as follows:

> During the portion of *voir dire* in which jurors were asked about their ability
> to consider the death penalty, counsel stated several times that these were
> premeditated, cold-blooded murders. Counsel was conceding the co-defendants'
> guilt, not Johnson's. Counsel consistently blamed the co-defendants for the killings
> while arguing that Johnson shot nobody. The record reflects that with these *voir dire*
> questions counsel was trying to ascertain whether jurors could fairly consider all
> three punishments under these circumstances, a reasonable concern in a capital case.
> Johnson has filed an Application for Evidentiary Hearing on this issue. The affidavit
> in support of the Application states that trial counsel did not intend to concede
> Johnson's guilt at any time during the first stage. This unsurprising statement is
> reflected in the record, which shows that trial counsel did not in fact concede
> [Johnson's] guilt. As no concession of guilt was made, counsel was not ineffective.
> Johnson's Application for Evidentiary Hearing on this issue is denied. This
> proposition is denied.

(Dkt. # 5, Ex. 3 at 7-8 (footnotes omitted)).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel,

Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable

application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin, 275 F.3d at 1235; Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

The Court finds that Petitioner cannot satisfy the Strickland standard. He has failed to demonstrate that counsel performed deficiently during the first stage of *voir dire*. During that stage, the potential jurors were asked to assume that they had found Petitioner guilty of all three murders. Counsel repeatedly explained that this was merely an assumption for the purpose of determining the

8

potential jurors' abilities to consider all three possible punishments.  See, e.g., Dkt. # 7-16, Tr.

Trans. at 203; Dkt. # 7-17, Tr. Trans. at 528.  Counsel did not concede Petitioner's guilt during *voir*

*dire*. Petitioner has failed to demonstrate that the OCCA's adjudication of his claim of ineffective

assistance of trial counsel was contrary to, or an unreasonable application of, Strickland. Petitioner

is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel. 28 U.S.C. §

2254(d).

### 3.  Inaccurate jury instruction on Life with Parole

In proposition three, Petitioner argues that the trial court committed fundamental error during

the sentencing stage when he issued a "materially inaccurate" jury instruction as to the penalty of

Life with Parole.  See Dkt. # 1.  On direct appeal, Petitioner argued that the issued instruction, No.

15, omitted entirely any language concerning his eligibility for sentence credits, under the 85% Rule,

should he receive a sentence or sentences of life with the possibility of parole.  The OCCA agreed

with Petitioner that "[t]he trial court should have given the complete instruction." See Dkt. # 5, Ex.

3 at 8.  However, since neither party objected to the instruction, the OCCA reviewed for plain error

and found as follows:

> Even reviewing for plain error, the State has the burden to show beyond a reasonable
> doubt that this constitutional error did not contribute to the verdict. Witnesses
> testified that three guns were used, that Johnson was armed and shot two of the
> victims, and that Johnson fled the scene and tried to dispose of evidence afterwards.
> Johnson admitted that he was there, gloved and armed, and threw his gloves and a
> purse from the scene out of the car as they fled. He also admitted that he couldn't say
> he didn't know what would happen when he, Goode and Bunny approached the
> victims' house. During second stage closing argument defense counsel emphasized
> that Bunny, who was related to one of the victims, did not receive the death penalty.
> Counsel argued that Johnson should not receive a sentence greater than Bunny's, and
> strongly suggested that a similar sentence would be appropriate. Jurors found the
> single alleged aggravating circumstance. While Johnson correctly notes that this
> circumstance was inherent in the evidence, the jury's finding is not as insignificant
> as Johnson claims. In determining whether an error in instruction on the 85% Rule

9

requires relief we look at the sufficiency of the evidence supporting the sentences. If, as here, strong evidence supports the jury's sentence recommendations, we may conclude that jurors did not round up their recommendations because they had unanswered questions regarding the possibility of parole. This error does not require relief and this proposition is denied.

(Dkt. # 5, Ex. 3 (footnotes omitted)).

It is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").

The OCCA determined that the trial court erred in failing to instruct that, under the 85% Rule, a prisoner serving a sentence of life with the possibility of parole would be ineligible to earn sentence credits until he had served 85% of the sentence. However, the OCCA further determined that the instructional error was harmless because the weight of the evidence sufficiently supported the jury's sentence recommendations. Having carefully reviewed the record, this Court agrees. The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S.619, 638 (1993).  See Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted).  "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Rose v. Clark, 478 U.S. 570, 579

(1986)). Thus, Petitioner's burden is to show that the sentencing stage of his trial was rendered fundamentally unfair by the trial court's failure to issue a complete instruction on application of the 85% Rule to a sentence of life with the possibility of parole.  He has failed to satisfy that burden.

The Court finds that the omission of language regarding ineligibility to earn sentence credits under the 85% Rule from the instruction on life with the possibility of parole did not contribute to the jury's sentencing recommendations. Significantly, the challenged instruction informed the jury that a defendant serving a sentence of life with the possibility of parole "will not be eligible to be considered for parole until he has actually served at least eight-five [sic] (85%) of the sentence imposed." See Dkt. # 7-10, O.R. at 974, Instruction No. 15. Thus, the jury knew the 85% Rule would apply to a sentence of life with the possibility of parole and that the defendant would be required to "actually" serve 85% of his sentence if sentenced to life with the possibility of parole. Although the instruction omitted language regarding entitlement to sentence credits, the error was harmless.  The evidence heard by the jury supported a sentence of life without the possibility of parole.  That evidence included testimony that Petitioner and his two co-defendants were all armed with handguns and all wore gloves when they entered the residence.  See Dkt. # 7-18, Tr. Trans. at 837-40.  Shell casings and bullet fragments recovered at the scene and from the victims' bodies demonstrated that three guns were used to kill the three victims. See Dkt. # 7-19, Tr. Trans. at 952-60. The jury also viewed the videotaped interview of Petitioner and heard him admit to being present at the scene and state that he could not say that he didn't know that his co-defendants "weren't going to do something." See Dkt. # 7, State's Ex. 112, recording of Petitioner's interview on August 30, 2005; see Dkt. # 7-20, Tr. Trans. at 1313 (DVD of interview played for jury). Furthermore, the jury found the existence of an aggravating circumstance justifying entry of the death penalty, but recommended

that Petitioner be sentenced to life without the possibility of parole on all three First Degree Murder convictions. Therefore, under the facts of this case, Petitioner has not shown that the omission of language concerning ineligibility to earn sentence credits under the 85% Rule on the sentencing option of Life with Parole contributed to the jury's sentencing recommendations. The error in the instruction did not deprive Petitioner of his fundamental right to a fair sentencing trial. Petitioner is not entitled to habeas corpus relief on this claim.

### 4. Double jeopardy/double punishment violation

In proposition four, Petitioner alleges that because he was subjected to multiple punishments in violation of his constitutional rights to be free from double jeopardy, his First Degree Burglary conviction should be reversed. The record reflects that, at the conclusion of the first stage of trial, Petitioner's jury found him guilty of both First Degree Malice Murder and First Degree Felony Murder on all three murder charges, and guilty of First Degree Burglary. See Dkt. # 7-10, O.R. at 894-897. On direct appeal, Petitioner argued that notes from the jury to the trial judge demonstrate that the jury was confused regarding the dual charges of First Degree Malice Murder and First Degree Felony Murder. See Dkt. # 5, Ex. 1 at 28-29. In light of that apparent confusion, Petitioner argued that he should "receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony," and, for that reason, his conviction for First Degree Burglary should be reversed with directions to dismiss. Id. at 29. The OCCA rejected Petitioner's argument, finding as follows:

> Johnson incorrectly claims in Proposition IV that his conviction for burglary must be dismissed. Johnson was charged in Counts I-III with first degree murder, and in Count IV with burglary. Each murder count was charged in the alternative as malice murder by shooting each victim, and as felony murder with first degree burglary as the underlying felony. The jury was instructed separately on malice and felony murder for each count. The jury returned separate verdict forms on each

murder count and found Johnson guilty of both malice and felony murder on each count. Where a jury explicitly finds guilt under both alternatives, we will construe the conviction as first degree malice murder. Doing so here, Johnson's Count IV conviction for burglary stands.

(Dkt. # 5, Ex. 3 at 10 (footnote omitted)).

To the extent Petitioner claims that he has suffered multiple punishments in violation of Oklahoma statutory law, Okla. Stat. tit. 21, § 11, the Court finds the claim should be denied because it is not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id.; 28 U.S.C. §§ 2254(a). Petitioner's multiple punishment claim, insofar as it is based on an Oklahoma statute, is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis.

Nor is Petitioner entitled to relief on a constitutional claim of double punishment. The double jeopardy clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds by* Alabama v. Smith, 490 U.S. 794 (1989). In addition, a single act may form the basis for the prosecution of two distinct statutory offenses whenever conviction for each offense requires the proof of a fact that the other does not. Blockburger v. United States, 284 U.S. 299, 304 (1932); Anderson v. Mullin, 327 F.3d 1148, 1153-54 (10th Cir. 2003); Goldsmith v. Cheney, 447 F.2d 624, 627-28 (10th Cir. 1971). In this case, had Petitioner been convicted of only Felony Murder, and not First Degree Malice Murder, along with the underlying felony of First Degree Burglary, he may have had a valid claim "since a defendant

13

cannot be convicted of felony murder and the underlying felony." <u>Alverson v. State</u>, 983 P.2d 498, 521 (Okla. Crim. App. 1999). However, Petitioner's jury found him guilty of both First Degree Malice Murder and First Degree Felony Murder as to all three murders. When that happens, the OCCA routinely construes the verdict as a conviction of First Degree Malice Murder and disregards the Felony Murder conviction. <u>Id.</u> As a result, the First Degree Burglary conviction did not merge into the First Degree Malice Murder convictions, and may stand. There is no double jeopardy violation. <u>See</u> <u>also</u> <u>Williams v. State</u>, 188 P.3d 208, 225 (Okla. Crim. App. 2008). Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. Therefore, his request for habeas corpus relief shall be denied. 28 U.S.C. § 2254(d).

### 5. Denial of motion to suppress statements

As his fifth proposition of error, Petitioner claims that the trial court erred in denying his motion to suppress his statements obtained in violation of the 5th and 14th Amendments. <u>See</u> Dkt. # 1. On direct appeal, Petitioner argued that his statements obtained during his custodial interrogations were made involuntarily and in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). <u>See</u> Dkt. # 5, Ex. 1 at 30. He complains that police officers failed to reread his rights under <u>Miranda</u> and to obtain valid rights waivers prior to each of his interviews. In rejecting this claim, the OCCA carefully reviewed the chronology of Petitioner's interviews with various law enforcement personnel, including Owasso police officer DeArmond and Tulsa police officers Ellis and Hickey, and the officers' discussions of Petitioner's rights under <u>Miranda</u>. The OCCA determined that Petitioner was not entitled to relief, finding as follows:

> Johnson now claims that the two later interviews with Ellis should have been suppressed because Ellis did not formally re-administer *Miranda* warnings before

each interrogation. On the contrary, the earlier warnings given by the Owasso police adequately informed Johnson of his constitutional rights throughout the subsequent interrogations. Johnson was in police custody the entire time, spoke with various police officers for most of the time, and was aware that police were trying to determine his role in this triple murder. We strongly urge law enforcement officers to repeat *Miranda* warnings under these circumstances. However, sufficient evidence supports the trial court's ruling that Johnson's statements were voluntary. This proposition is denied.

(Dkt. # 5, Ex. 3 at 12 (footnotes omitted)).

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. In <u>Miranda</u>, the Supreme Court concluded that, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." <u>Miranda</u>, 384 U.S. at 467. The Court admonished that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." <u>Id.</u> at 476. It is well settled that the <u>Miranda</u> warning is a constitutional requirement adopted to reduce the risk of a coerced confession and to implement Fifth Amendment protections. <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000). "The purposes of the safeguards prescribed by <u>Miranda</u> are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures' generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433 (1984) (internal citations and footnotes omitted). However, the <u>Berkemer</u> Court observed that, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities

15

adhered to the dictates of Miranda are rare." Id. at n.20.  After being advised of his Miranda rights, an accused may himself validly waive his rights by an express statement that he is willing to make a statement. North Carolina v. Butler, 441 U.S. 369, 374 (1979).

The issue posed by these facts is whether Petitioner's waiver of his rights, after being read his rights based on Miranda, was rendered stale by the passage of time.  In United States v. Nguyen, 608 F.3d 368 (8th Cir. 2010), the Eighth Circuit determined that a delay of three days did not render the defendant's waiver ineffective. Id. at 375. The Ninth Circuit has also found that a three day passage of time did not render a waiver of rights invalid. Maguire v. United States, 396 F.2d 327, 331 (9th Cir. 1968). The Fifth Circuit has found that a time lapse of a full day between a Miranda warning and a subsequent interrogation did not render the defendant's waiver ineffective. United States v. Pruden, 398 F.3d 241, 246-47 (3d Cir. 2005).  In all of those cases, the defendants were reminded of their rights in later interviews, and acknowledged that they remembered and understood their rights.

In this case, the record reflects that Petitioner was arrested by Tulsa police officers on August 29, 2005, at about 2:30 a.m. Officer DeArmond from the Owasso Police Department interrogated Petitioner in the Tulsa Police Department's interview room. The interview began at about 5:30 a.m. on August 29, 2005.  Prior to the interview, Officer DeArmond read Petitioner his Miranda rights and Petitioner executed a rights waiver at 5:39 a.m. See Dkt. # 7-12, Trans. Mot. Supp. Hr'g at 20. Those facts support the finding that Petitioner knew and understood his rights at the time of his initial waiver. Officer DeArmond's first interview lasted about an hour and a half.  See Dkt. # 7-20, Tr. Trans. at 1276.  Petitioner was then transported to the Owasso Police Department where he continued to be interviewed by several more Owasso police officers. See Dkt. # 7-12, Trans. Mot.

16

Supp. Hr'g at 9-10. Later that day, beginning at approximately 3 p.m., Officers Ellis and Hickey of the Tulsa Police Department interviewed Petitioner at the Owasso Police Department. See Dkt. # 7-20, Tr. Trans. at 1279. Finally, on Tuesday, August 30, 2005, at about 8:15 p.m., Officers Ellis and other officers again interviewed Petitioner after he had been returned to the Tulsa Police Department. Id. at 1310.

During those later interviews, the officers did not reread the Miranda warnings to Petitioner. However, Officer Ellis asked Petitioner if he had been read his rights, whether he understood his rights, and whether he was still willing to talk to the officers. See Dkt. # 7-12, Trans. Mot. Supp. Hr'g at 44, 49.  Petitioner answered, "yes" he understood his rights, and "yes" he still wanted to talk to the officers. Id. At no time during these interviews did Petitioner ask for an attorney. Id. at 29, 50. Nothing suggests that Petitioner's statements were in any way coerced. That record supports a finding that Petitioner knowingly and voluntarily waived his rights during all of his interviews with the police. Therefore, the Court finds Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on his claim that the trial court erred in denying his motion to suppress. 28 U.S.C. § 2254(d).

### 6.  Erroneous admission of hearsay and other evidence

In ground 6, Petitioner claims that the trial court erred in admitting prejudicial hearsay statements from his father and other evidence in violation of his rights to confrontation and a fair trial. See Dkt. # 1.  On direct appeal, see Dkt. # 5, Ex. 1, Petitioner cited two hearsay statements that were erroneously admitted and caused him to suffer prejudice. The first statement was made by Petitioner's father during the father's telephone conversation with Petitioner. Petitioner placed the

telephone call from the jail. Therefore, the call was recorded.  During the conversation, Petitioner's father commented on rumors that Johnson was "crippin," a term referring to gang activity. See Dkt. # 5, Ex. 1 at 41. At trial, Petitioner objected to the admission of the taped conversation, but it was admitted over his objection.  See Dkt. # 7-20, Tr. Trans. at 1324. The second hearsay statement cited by Petitioner was made by Michelle Chastain, sister of victim Mitchell Thompson. See Dkt. # 5, Ex. 1 at 42-46.  Ms. Chastain testified that Goode told her on August 26 about the murders, but that she waited to tell police because she was scared since Goode had threatened her.  Petitioner did not object to Ms. Chastain's statements at trial.  He claimed on direct appeal that the statements by Goode were hearsay which implicated him in the crimes.

The OCCA rejected these claims.  As to the statements made by Petitioner's father, the OCCA found that "the tape was not offered to prove the truth of the statements contained in it, and thus is not hearsay. There was no Confrontation Clause violation and the trial court did not err in admitting the evidence." See Dkt. # 5, Ex. 3 at 14. As to Ms. Chastain's testimony, the OCCA found that her statement that she was scared because Goode had threatened her was not hearsay because she "did not testify about anything Goode said." Id. at 15.  In addition, even if Ms. Chastain's testimony that Goode told her about her family members was hearsay, the OCCA found "it did not implicate Johnson in the crimes. Thus its admission, even if error, did not prejudice Johnson and does not constitute plain error."  Id. (footnote omitted).

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010).  In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming

a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" <u>Maes v. Thomas</u>, 46 F.3d 979, 987 (10th Cir. 1995) (quoting <u>Tapia v. Tansy</u>, 926 F.2d 1554, 1557 (10th Cir. 1991)); <u>Revilla v. Gibson</u>, 283 F.3d 1203, 1212 (10th Cir. 2002). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting <u>United States v. Rivera</u>, 900 F.2d 1462, 1477 (10th Cir. 1990) (<em>en banc</em>)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." <u>United States v. Russell</u>, 411 U.S. 423, 432 (1973) (internal quotation omitted).

Upon review of the trial transcripts, the Court finds Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair as a result of the admission of the complained of testimony. The audio-taped conversation between Petitioner and his father explained the chronology of Petitioner's interviews with various law enforcement officers. Even if Petitioner's father made references to "crippin" or to Petitioner's gang related activities, the reference was harmless since Petitioner himself acknowledged his gang affiliation during his August 30, 2005, video-taped interview, <u>see</u> Dkt. # 7, State's Ex. 112, played to the jury during Officer Ellis's testimony, <u>see</u> Dkt. # 7-20, Tr. Trans. at 1313. As to Chastain's testimony regarding her conversation with co-defendant Goode, the Court again finds Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair as a result of the testimony. As noted by the OCCA, Chastain never repeated what Goode said. She testified that Goode told her about the murders and had threatened her, <u>see</u> Dkt. # 7-20, Tr. Trans. at 1241, but she did not say what Goode had said to her. Those statements

did not implicate Petitioner in the shootings and his trial was not rendered fundamentally unfair as a result of the challenged testimony.

The Court further finds that the challenged testimony does not implicate a violation of the Confrontation Clause because the statements were non-testimonial. The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36, 38 (2004). The Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59. Thus, the focus of the protection afforded by the Confrontation Clause is formal, testimonial statements. Neither the audio-taped comments by Petitioner's father nor the testimony of Ms. Chastain regarding comments by co-defendant Goode involved testimonial statements. See United States v. Smalls, 605 F.3d 765, 778 (10th Cir. 2010) (analyzing Crawford and its progeny with respect to the meaning of the term "testimonial"). There was no Confrontation Clause violation. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on this claim.

### 7. Cumulative error and abuse of sentencing discretion

In ground 7, Petitioner claims that he was denied a fair trial by cumulative error and the trial court's "abuse of sentencing discretion." See Dkt. # 1. He requests that his sentences on Counts I, II, and III be modified to life with parole, ordered to run concurrently. The OCCA denied relief on these claims, finding as follows:

We found error only in Proposition III and determined that error did not require relief. As no other error was present, there is no cumulative error. Johnson also claims in this proposition that the trial court erred in failing to consider his request for concurrent sentencing. The State fails to respond to this claim. The record does not support Johnson's claim that the trial court did not consider his request. In fact, the trial court stated that he had received material in support of Johnson's request but had decided to deny it. The trial court noted that it would make no difference whether Johnson's sentences of life without parole were concurrent or consecutive. Johnson argues this observation was inconsistent with the same trial court's earlier decision to run Goode's three capital sentences concurrently with each other and his sentence for burglary, and later decision to run Bunny Thompson's sentences concurrently. On the contrary, the individual circumstances of each defendant suggest that the trial court exercised its discretion in each case. Goode's death sentences are qualitatively different from the others, since once a single death sentence has been carried out the others cannot be served. Bunny Thompson testified against both Johnson and Goode, and the trial court may have considered that assistance, if only on a symbolic level, when deciding to run his sentences concurrently. The trial court did not abuse its discretion in sentencing. This proposition is denied.

(Dkt. # 5, Ex. 3 at 15-16 (footnote omitted)).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having found only one harmless error in this case, the second-stage instructional error, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary

to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this ground.

The Court also finds that Petitioner is not entitled to habeas relief on his claim alleging that the trial judge abused his discretion at sentencing.  A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." Id.  In this case, Petitioner was convicted of three counts of First Degree Murder.  The sentences he received were authorized by law. There is no basis for habeas relief.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of the AEDPA standards to the decision by the OCCA was debatable amongst jurists of

reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

***CONCLUSION***

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment in favor of Respondent shall be entered in this matter. A certificate of appealability is **denied**.

DATED THIS 4th day of April, 2013.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE